---

MAYNARD (ARNOLD v.). See Case No. 561.

MAYNARD (BENEDICT v.). See Cases Nos. 1.294–1.296.

MAYNARD (LYELL v.). See Case No. 8,619.

MAYNE (MILLIGAN v.). See Case No. 9,606.

---

## Case No. 9,353.

### In re MAYO.

#### [4 Hughes, 382.]

District Court, E. D. Virginia. April 30. 1878.[1]

BANKRUPTCY—BOND GIVEN TO ASSIGNEE—LIABILITIES OF SURETIES—PAROL EVIDENCE.

[A bond under seal given by a bankrupt to the assignee in bankruptcy, and conditioned for the payment of money or the forthcoming of property, and the making good of any deficiency remaining after a sale of the same, being perfect and complete in all respects upon its face, *held* valid according to its terms, against the sureties, notwithstanding their testimony that they signed it under an agreement with the obligee that the signature of a certain third person was also to be obtained, and that it was understood that the sureties were only bound for the nonremoval of personal property and not for the payment of any money.]

[In bankruptcy. For prior proceedings in this litigation, see Case No. 5,245a.]

HUGHES, District Judge. This is a petition filed in the bankruptcy proceeding by the assignee in bankruptcy of D. C. Mayo, praying that Mayo's sureties, W. K. Watts and Lawrence Lottier in his bond of 27th October, 1876, conditioned to fulfil and perform all the conditions of the order of this court in this matter entered on the 12th October, 1874, shall be required to perform their obligation thereunder by paying the sum of $6,-358.71, with interest, &c., to the assignee; that being the amount of their liability ascertained by the decree of this court in this matter, made on the 24th of May, 1876. The petition is resisted by Watts on the ground that at the time of signing the bond he did it on an understanding with W. H. Alderdice, the obligee and the then assignee in this bankruptcy, that the bond was also to be signed by one Joseph P. Winston, whose signature to it was not obtained. It is resisted by Lottier on a like ground and also on the ground that if the bond is void as to Watts, it is also void as to himself. The only question in the case is whether or not there was such an understanding in respect to the bond between Watts and Alderdice as renders valid this defense.

The bond itself is perfect in its form. On its face it contains no indication that any other name was intended by any party to it to be added to those apparent on its face. The signatures are admitted to be genuine. Watts did not insist when he signed the bond that Winston's name should be placed in the beginning of the bond where the names of the obligors were mentioned. That part of the bond is in appearance perfect and complete with the names of Mayo, Watts and Lottier recited as obligors, and contains no indication by interlineation or otherwise that Watts insisted upon the addition of Winston's name. So at the conclusion of the bond, the word seal is written but three times, and no proper room left for another seal. Mr. Wise testifies positively that the bond was in complete form just as it is, before any name was signed to it. In short, the bond is in form and appearance perfect, containing no indication that another obligor had been intended to be added by the draftsman or any one of the obligors or the obligee.

It is a bond under seal, attested by subscribing witnesses. It is an instrument of the most solemn form known to the law, and the law presumes everything in favor of its validity and binding effect, against the obligors.

---

Coupled with Watts' asseveration of an understanding with Alderdice that the bond should be signed by Winston, is the like asseveration of an understanding that the bond bound him only to the non-removal and forthcoming of the tobacco fixtures to which it refers, and not to the payment of money. This allegation is sustained by evidence scarcely less strong and direct than that in regard to Winston's signature; and yet an inspection of the language of the bond proves that there could have been no such understanding. The condition was to have all the personalty enumerated in schedule "B" forthcoming whenever the court should require him, &c., &c.; "and to pay said purchase money, to wit, $12,000, one fourth cash, the balance in six, twelve and eighteen months, from the date of an order requiring him so to do, or else surrender the personal property aforesaid for sale by the assignee, and in the event it sells for less than the balance due, to make good the deficiency." Watts is shown by the terms of the bond to be clearly mistaken as to any understanding with Alderdice, that the bond given did not bind him to pay money; and the complete form and finished appearance of the bond almost as clearly shows that there could have been no such understanding as he alleges as to the signature of Winston. For reasons stated in writing 30th of April, 1878, when I set aside the verdict of the jury then recently rendered, I cannot bring my mind to credit Watts' testimony or to conclude that this bond is void as to Watts. I do not mean in this declaration to impute bad faith to him or any witnesses who more or less corroborate him in regard to the alleged understanding with Alderdice as to Winston's signature. I have no doubt of his and their sincerity in such testimony as they have given. The strong bias of interest upon a mind long pondering over and much excited upon one subject has doubtless produced genuine convictions of the truth of the things to which he testifies. I think he has confounded what was said when the first bond which Mr. Wise prepared was brought to him for signature, with what was said when this second bond was executed. The testimony of Mr. Putney and Mr. Bondar when given before the jury was very indefinite, inconclusive and unreliable, and the fact of its having become much strengthened by the time their late depositions were taken, may be truly ascribed to their sympathy for a good man threatened with a loss of this sort. I do not think in refusing to accept their evidence as sufficient to overcome the strong, clear, unqualified language of the bond itself which stands before me as a fact which the law presumes to be genuine until absolutely disproved—that I reflect upon their veracity or integrity of purpose. I have taken pains to have the whole case put in writing in order that, if I myself am in error in making an order enforcing this bond, the error may be corrected on appeal. I will sign an order in accordance with the prayer of the petition.

From this decision of the district court appeal was taken to the supervisory jurisdiction of the circuit court, the chief justice of the United States sitting. [The judgment of the district court was affirmed. Case No. 9,353a.]